*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 24, 2016          521498
_____

In the Matter of JAMES J.
    KELLY,
                        Petitioner,

        v                                    MEMORANDUM AND JUDGMENT

THOMAS P. DiNAPOLI, as State
    Comptroller,
                        Respondent.
_____

Calendar Date:   January 14, 2016

Before:  McCarthy, J.P., Garry, Lynch, Devine and Clark, JJ.

                    _____


        Bartlett, McDonough & Monaghan, LLP, White Plains (Jason
Lewis of counsel), for petitioner.

        Eric T. Schneiderman, Attorney General, Albany (William E.
Storrs of counsel), for respondent.

                    _____


McCarthy, J.P.

        Proceeding pursuant to CPLR article 78 (transferred to this
Court by order of the Supreme Court, entered in Albany County) to
review a determination of respondent denying petitioner's
application for accidental disability retirement benefits.

        Petitioner, a police officer, injured his neck and shoulder
while rescuing people trapped in a house due to damage caused by
Hurricane Sandy.  He thereafter applied for accidental disability
retirement benefits and the application was denied on the ground
that the incident did not constitute an accident within the
meaning of the Retirement and Social Security Law.  Ultimately,
respondent upheld the denial and petitioner commenced this CPLR

article 78 proceeding challenging that determination.

We confirm. Respondent's determination will be upheld if supported by substantial evidence (see Matter of Roth v DiNapoli, 105 AD3d 1183, 1184 [2013]). For the purposes of Retirement and Social Security Law § 363, an injury that results from "a risk of the work performed" is not an accident (Matter of Schoales v DiNapoli, 132 AD3d 1184, 1185 [2015] [internal quotation marks and citation omitted]; see Matter of Hyland v New York State Comptroller, 121 AD3d 1149, 1149 [2014]). Consistent with this principle, this Court has long recognized that police officers face many substantial risks in the regular course of their duties that are inherent to the work that they perform (see e.g. Matter of Schoales v DiNapoli, 132 AD3d at 1186; Matter of Lanzetta v DiNapoli, 130 AD3d 1109, 1009-1110 [2015]; Matter of Scofield v DiNapoli, 125 AD3d 1086, 1086-1087 [2015]; Matter of Dicioccio v DiNapoli, 124 AD3d 1170, 1170-1172 [2015]; Matter of Bennett v DiNapoli, 119 AD3d 1310, 1310-1312 [2014]; Matter of Carpenter v DiNapoli, 104 AD3d 1037, 1038 [2013]; Matter of Franks v New York State & Local Retirement Sys., 47 AD3d 1115, 1115-1116 [2008]; Matter of Sansone v Levitt, 67 AD2d 1044, 1044-1045 [1979]).

According to petitioner, he was considered a first responder to emergency calls and had a duty to assist injured persons. The Uniform Police Officer Job Description that governed petitioner's job confirmed petitioner's testimony to the extent that it dictated that his professional responsibilities included "[a]ssist[ing] any injured persons."[1] Petitioner

---

[1] In our view, this description sets forth the ordinary and anticipated demands of petitioner's job, and the dissent's conclusion that petitioner's assistance of injured persons here was "well outside the ordinary expectations and anticipated demands of petitioner's job duties" fails to account for the fact that petitioner's actions unambiguously fell within his official job description. Further, a rational factfinder was not required to ignore this official job description in favor of the self-serving job description that petitioner provided in his testimony. Notably, petitioner's testimony to the effect that he was not professionally obligated to assist the injured persons

acknowledged that, due to the hurricane, his supervisors had impressed upon him that his professional duty extended to responding to emergency calls involving life and limb. Petitioner explained that he answered a call regarding occupants of a house who were trapped due to a tree falling onto and through the home.  Petitioner acknowledged that, when he arrived, the home was not a stable structure and debris was still falling, but he explained that he had to go in to help the trapped occupants.  Petitioner was thereafter injured while throwing debris off of the trapped occupants and while holding up debris that continued to fall during that rescue effort.  Accordingly, a reasonable conclusion to draw from the record is that the threat that compelled petitioner's response as a police officer and first responder — the dangerous condition in the home — was the same threat that ultimately caused petitioner's injuries.  Given this substantial evidence that petitioner's injury resulted from foreseeable risks inherent to being a police officer whose duty it was to assist injured persons, we will not disturb respondent's determination (see Matter of Schoales v DiNapoli, 132 AD3d at 1186; Matter of Lanzetta v DiNapoli, 130 AD3d at 1009-1110; Matter of Scofield v DiNapoli, 125 AD3d at 1086-1087; Matter of Dicioccio v DiNapoli, 124 AD3d at 1170-1172).

        Devine and Clark, JJ., concur.


Garry, J. (dissenting).

        We respectfully dissent, as we find that the circumstances of petitioner's injury were of an extraordinary, urgent, and wholly unanticipated nature, and the resulting risks to him were beyond the scope of his anticipated duties, even given the potentially dangerous nature of his work as a police officer. Petitioner's injuries resulted from circumstances that were "unusual, unexpected and not a risk inherent in the ordinary

here was not supported by any further evidence, and a rational person could conclude that it contradicted the official job description.

performance of [his] regular duties" (Matter of Leuenberger v McCall, 235 AD2d 906, 907 [1997]; see Matter of Pratt v Regan, 68 NY2d 746, 747-748 [1986]).  He was providing urgent emergency services in the midst of a hurricane.  Upon arriving at the scene, he found a partially destroyed, unstable structure with two walls and half of the roof missing; it was raining, there were high winds, and debris and trees were continuing to fall. One resident was already dead and others were trapped inside. Due to the ongoing storm conditions and surrounding devastation, petitioner soon learned that there would be no further aid or assistance available – no one else was able to reach the scene. The record reveals without contradiction that absent these highly exceptional circumstances, and in the ordinary course of petitioner's duties, he would neither have entered the unstable structure nor attempted the rescue that caused his injuries.

Petitioner's general job duties necessarily included assisting injured persons.  However, it was not his personal duty to directly provide aid in every circumstance.  The uncontroverted testimony demonstrated that petitioner's job duties did not encompass entering unstable structures under unsafe circumstances to carry out rescues; to the contrary, he was specifically instructed not to do so.  Indeed, petitioner lacked any training to carry out such rescues, a compelling factor in this analysis.  The established department protocol called for petitioner to assess the safety of a scene upon arrival.  If his assessment revealed that a structure was unstable, he was not to enter it.  It was instead his duty to call for personnel with the necessary training.  While awaiting their arrival, petitioner's further duty was to maintain the perimeter, prevent people from entering, call for supervisors or ambulances if necessary and, in short, provide the safest possible conditions to allow people possessing the appropriate skills and training to carry out the rescue.

Here, petitioner was unable to comply with the established protocol due to the unusually severe storm in progress.  Upon calling for assistance, petitioner learned that the fire department would be substantially delayed, the technical rescue team was two hours away, and other police officers were unable to report.  There were but two rescuers available – petitioner and

his partner.  Therefore, despite their lack of training and the instability of the structure, they entered the house and attempted the rescue.  Petitioner felt an injury in his shoulder as he threw debris off the trapped and injured residents, but continued to work.  Shortly thereafter, an overhead rafter began to fall toward petitioner's partner and the residents.  Grabbing it, petitioner immediately felt additional pain in his shoulder and neck.  This injury thus resulted directly from the instability of the structure; but for the intense urgency, it may have been possible to shore up the structure and decrease the risk of injury to the rescuers.  These unusual facts reveal the wholly unexpected nature of the event, in which "time was of the essence" and petitioner was confronted with the immediate need to gain access to an unstable structure despite his lack of appropriate training, and place the occurrence well outside the ordinary expectations and anticipated demands of petitioner's job duties (Matter of Cantone v McCall, 289 AD2d 863, 864 [2001]).  In clear contrast to the recent authority relied upon by the majority, there is simply nothing in the underlying circumstances that may be considered either routine or ordinary, even for a police officer (compare Matter of Schoales v DiNapoli, 132 AD3d 1184, 1885-1186 [2015]; Matter of Lanzetta v DiNapoli, 130 AD3d 1109, 1110 [2015]; Matter of Dicioccio v DiNapoli, 124 AD3d 1170, 1171 [2015]).

For the same reasons, we further find that respondent's determination to the effect that petitioner's injury resulted from "voluntarily attempting a task routinely performed by other officers" (Matter of Caramante v Regan, 129 AD2d 850, 852 [1987], lv denied 69 NY2d 611 [1987]; see Matter of Woods v McCall, 240 AD2d 839, 839 [1997], lv denied 90 NY2d 808 [1997]) was unsupported by substantial evidence.  Accordingly, we would grant the petition and annul the determination.

Lynch, J., concurs.

ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

ENTER:

Robert D. Mayberger
Clerk of the Court